v. Village of Palatine, Mr. Murphy. Good morning, Your Honors. May it please the Court, I'm Martin Murphy on behalf of the Plaintiff, Jason Senne. This case arises, as I'm sure at least your honors are familiar with, the Driver's Privacy Protection Act. As the title of the law is Driver's Privacy Protection Act, it conveys basically what the gist of the law is. In addition, the caption prohibition on release and use of certain personal information from state motor vehicles also supports that claim and paragraph A says that no one shall, State Department of Motor Vehicles and any officer, employer or contractor thereof shall not knowingly disclose or otherwise make available to any person or entity personal information or highly personal information from a motor vehicle record. In this case there's no question that Palatine made the information available to the public. But the question is whether this information is relevant to legitimate police duties. That's not the question. The question is what's the public's use for the information because if the State Department of Motor Vehicles releases the information to the Palatine Police Department, its permissible use or permissive purpose for disclosing that information is that Palatine is a law enforcement agency. When a law enforcement agency then releases that information to the public, the question isn't whether Palatine has a legitimate use for the information or need for it. What do you mean by releasing to the public? They write information on a ticket and the question is whether doing that, putting that information on the ticket, is in furtherance of legitimate police responsibilities. No, the question is whether the person that they gave the information to, released it or made it available to, has a legitimate need for the information. I don't understand what you're saying. What I'm saying is if you take it from the very beginning. If the police put on the traffic ticket information which helps them to enforce the law, that becomes a possible justification for this invasion of privacy. No, it becomes a permissible obtainment, meaning that Palatine is entitled to obtain the information. It doesn't mean you can further release that information. Look, you're not following me at all. I'm following you completely. No, you're not at all. You have no idea what I'm saying. What I'm saying is there is an issue whether putting that information on the traffic ticket, under the windshield wiper, serves a purpose in law enforcement. So they make various arguments about it, that the person is more likely to pay if they know that the police know, you know, their address or their full name or something like that, right? Now don't we have to consider whether this information on the ticket really does serve significant police purposes? No, we don't because that again refers to obtain. Go back to the beginning, which is the State Department of Motor Vehicles, shall not release the information. If the Secretary of State says, listen, it's easier for us to just print all driver's license renewals and post them on our website and then people can just go there, verify their information, say it's okay, and publish it. And what if they make that information on an unsecure website? They just say let's put it out there. Can they do that? No. So then the question is, can Palatine do the same thing? We are not communicating. I'm not talking about posting this on the web. I'm talking about stuff that's put on the ticket. Which is left on it. So that the driver looks at the ticket and he sees, well they know where I live and so on, make more likely for him to pay it rather than just tear it up. Whether it does or doesn't isn't of any consequence. They're releasing it to the public. We all agree, 11 judges agree, including yourself, that it's a disclosure, right? It's a disclosure. Who are they disclosing the information to? You just didn't get it. Go on, make your own argument. You're not listening to me. I won't ask you any more questions. Just make your argument. Palatine isn't using the information in connection with Senn. Senn is the only party that this case involves at this point because the summary judgment was only as to one plaintiff, Jason Senni, not as to the public at large. So Mr. Senni speaks English, has a driver's license. The information wasn't put on his ticket so that he could show it to a police officer. In fact, the ticket itself has three options. Enclose a check or money order and mail in this envelope, which is the ticket, and return it to us. Or go to the police station and pay the ticket. Or go to the police station and request a hearing. Interestingly enough, of the thousands of tickets that were issued, only one in a thousand actually requested a hearing. Most people didn't request a hearing. Palatine didn't use the information in Jason Senni's case for any of the reasons it states. But they use it in a general sense. They can't possibly predict in any given case whether it's going to be used. The question is whether there's a possible use, not whether there is an in fact a use in any given case. And so the police chief, I read his deposition. He testified for 10 pages about all the possible uses that they make of this information. Right, like not leaving a ticket on a car because there might be a dead body in the trunk. I mean, they're not even using the information for that because they're not issuing a ticket. Or if the car is stolen, not leaving a ticket. I mean, the reasons that he gave, most of them make no sense at all. And the few that Judge Connelly accepted, three of them, was one, that you're going to have an illegal driver with no driver's license, a police officer with a computer that isn't working, and the person's going to hand the ticket to the officer, and the officer is going to be able to tell who this person is. Well, first of all, if they're not licensed, they won't have a driver's license number, they won't have a date of birth, they won't have a height, they won't have sex, they won't have weight. So what do you have? You have a name. You have a name and an address. That's it. You don't have any more information on that ticket. So the ticket isn't going to provide the officer with any more information. But again, it's the disclosure to the public that's missed. Also, subsection C, which is the authorizing disclosures. So if Palatine fills out the form, and it says, we made a disclosure, is the party that it's making a disclosure to going to be Palatine? We disclose the information to ourself for a law enforcement purpose, and that covers every disclosure that they make, the thousands of disclosures that they make? I don't think it does. So subsection C is completely ignored by Palatine. They don't address subsection C and say, yeah, this is how we keep a log of the information, who it's disclosed to, and who it's released to, and the permitted purpose for that person to have that information. They don't disclose that at all. They don't keep that record. So first of all, you don't even get up to subsection B without at least knowing who's the information disclosed to, and what's the purpose. So Palatine isn't merely disclosing the information to itself when it leaves on a parked car abandoned on the street, or abandoned in a metro station. I mean, if it's in a metro station, and I park my car, and I get a ticket, the person who's seeing my ticket knows that, one, I'm not home, right, because my car's there. They know where I live, so they can call a buddy and go rob my house. They can take the information, they can copy the ticket, and go get a duplicate title, and then go to my house later and steal my car, and with a title, go sell it. There's a lot of crime that can occur as a result of that. And Palatine says, well, we still like it because it's convenient. Well, that was rejected by the en banc majority. You can't just print information because it's convenient. Why is it a fait acceptable disclosure? Because when it was before the en banc court, they were going off of the allegations in the complaint, and if I accept your reasoning, everybody agrees it's face down on the windshield, it would require somebody to essentially commit a trespass on the vehicle to get access to the information. Well, the information is made available. That's the point. It's made available. That's why it's a disclosure. What if it was in a closed envelope? Pardon me? What if it was in a to be opened by a person who parked the car and no one else? Would that be a disclosure? Yes, because it's made available. It's left on a car, on an abandoned car. It's still available. The information is still available. It's not that it's not available. It would be a disclosure. I mean, I think Judge Poulter stated in his dissent that even if you were mailing a letter, and the letter got lost, never made it there, it's still a disclosure. All 11 judges agree that this is a disclosure. So the question is whether it's a partial disclosure. Based on what the allegations in the complaint were. Which is no different than what's actually happened after discovery. It's the exact same thing. The facts didn't change. There's really no difference. I mean, they don't use the information. When all the information is printed on the ticket, and the ticket is returned, all the clerk does is take the ticket number and the name of the person paying the ticket. Not the name of the person who violated the law or the person who's named on the ticket, but who's on the check. So they write the ticket number and the name of the person on the check. So if the check comes back, they know what ticket number is associated with it. So you assume that anything that's online is disclosed, right? Unsecured. Pardon? If it's on an unsecured site, it would be disclosure, yes. Oh, but they're all unsecured. Well, if you have to have a password, they have to log in. They're hacked by North Koreans, right? Right. And Russians, and so on. So it's like opening the envelope, right? It's not really. Everything can be accessed. Right, and the effort that's involved. So there's no, there are no secrets anymore. So why do you say, in response to Judge Simon's question, why do you say that, well, sealing it in an envelope under the windshield wiper, maybe putting scotch tape on it, that's still disclosure. But you seem to think that posting it, you know, putting it in cyberspace is not disclosure, even though we know that hacking is extraordinarily common. Right, because it's disclose or otherwise make available. Pardon? The statute says disclose or otherwise make available. Well, certainly in Judge Simon's example, the police are not making this available to the public by putting it in an envelope and sticking it under the windshield wiper. Well, I think it doesn't matter because that's not this case. Why is that making available any more than posting something online isn't making it available? Well, a person will walk by and grab the ticket. They know what's in there. They know what's on the ticket. Yeah, and a hacker with many more resources than the ordinary thief can find out anything that the police say internally over their, you know, communication lines. Right? That may be if the information is easy to get to. If only one in a million people could get to it. One in a million? It's a bunch of foreign countries with huge staffs who hack us regularly. Right. I don't know that would make it available. They probably collected all this information about people out of the police files in Palatine. Sure. But how is that any different than breaking into a Palatine police station and stealing the information out of a file? That would be the next example. You would regard that, you would probably say that if a theft occurred from a police station, it showed the police didn't have enough security and they had, in effect, exposed all the contents of their files to the public. But that wouldn't be a knowing disclosure. It might be a disclosure, but it wouldn't be a knowing disclosure. They wouldn't be knowingly disclosing the information. The information is kept under lock and seal. Their intent isn't to put the information out there. Their intent is to keep the information private. Well, the ticket eventually goes into the public record in some cases, doesn't it? No, I don't think it does. What if it's contested? One in a thousand tickets were contested. Right, but when tickets are contested, it's the court record, right? It's not in the record anywhere. We don't know what happens because those are private hearings. I mean, it's just an administrative communication. It's not a circuit court. I don't think it's an administrative record. Well, they're not private. They're not closed, I assume. No, I assume you could walk in and you could hear the town of Palatine versus... Well, you could also get the file, right? I don't know that you can. I never tried to get it. I know that you can't request the information from Palatine and get it. If I requested the information, I said, give me the name of all the people that violated, got a ticket, they wouldn't give me that information. Actually, back in their discovery, they gave me a response where they refused to disclose that information to somebody. They won't give you that information unless it pertains to your record. Then they'll give it to you. There's nothing in the record that says that they would give that information to anybody. And I don't think, again, it's pertinent to this because this case is whether or not they made the information available to the public, which they clearly did. So parking tickets are treated differently than traffic tickets? Yeah. And these are confidential public records as opposed to regular public records? When a parking ticket is issued, Palatine, between 2006 and 2010, Palatine made a four-part form. The bottom was the envelope. That was pulled off, left on the car. All four copies had the exact same information. Three of them would go back to a clerk, who would then take the information off the ticket and input it. That would then go into a sealed cabinet next to her desk. So even the police officer that wrote the ticket... What happens to the hard copy? It's left on a car. Well, no. It's in the booklet, right? That's what I said. The copy takes the other hard copy back. Three copies go back to a clerk. The police officer sticks it in his visor. He goes back to the station and turns in his tickets. And that becomes entered into the public record? No. It goes into their private database. It's not the public record. I can't access that information. You couldn't access that information. It goes into their database so they can keep track of fines and payments. They put the information into that system, their private database. The rest of that ticket is then filed away in a locked cabinet. So the officer writing the ticket, unless he has a reason to go into that file, can't even go into that file cabinet himself and access that information. Yet the public has access to the information if it's left on a car. But the officer can't get back to that information, even though he wrote the ticket. He would need permission from that person. If I could reserve the remainder of my time. Okay. Thank you, Mr. Murphy. Mr. Kujawa? Good morning, Your Honors. May it please the Court. Michael Kujawa on behalf of the Appali Village of Palatine. Since 1982, long before the implementation of the DPPA, it has been the policy of the Palatine Police Department to put as much information on parking tickets, all tickets, every ticket that was issued as possible, to fill in every single box. This was part of their general order that was first established in 1982. And it wasn't done without thought or for any reason. It was done for very specific reasons. And so in the 28 years until the time of this lawsuit, there was never a single problem, never a single complaint, no report of any crime or identity theft or anything that happened as a result of this information being put down on the tickets. And the reason why it was done, the reason why they created the general order, is because the next Palatine police officer, or any police officer for that matter, but the next Palatine police officer who was going to come in contact with that ticket would have as much information as possible. Because every time they're coming into contact with that ticket, that ticket, that disclosure is serving a law enforcement purpose. The personal information was put on that ticket for use by the Palatine Police Department in carrying out their law enforcement functions, which is exactly the permitted exception of 2721B1. The other reason is to increase the efficiency of the administrative proceeding that is begun when a parking ticket is issued. Each time that parking ticket is issued, it serves a process. It's also acting as a complaint that will be used if it is challenged for adjudication of the 2721B4. So when this case came up in front of the Embank panel the last time, the decision said that the case was going to be remanded for a determination. A determination of how the Palatine Police Department actually used all of the personal information it disclosed for use, and that was the key words that the decision rested on, for use by law enforcement and in service of process. When we went back down and conducted discovery in this case and we finally got to the summary judgment stage, we presented the uncontradicted and unrebutted testimony of Police Chief John Koziel, 29-year Palatine Police Officer, the last 11 as Police Chief, and he testified to over a dozen different ways in which that those tickets that were issued by Palatine in the four-year period was actually used, was put for use in both the law enforcement function and in the administrative proceeding, in the service of process and everything that goes along with that administrative proceeding. Well, the fight is about whether it was actually used in any of those ways in this particular case, which raises a question about how the interpretation of the en banc court, the last time the case was here, is actually applied in a given case, whether the evidentiary record has to demonstrate that the identifying information was actually used in this ticket recipient's particular case, or whether it's a more generalized inquiry. Well, first of all, I think it is a more generalized inquiry, Your Honor. I don't think that, as Judge Canelli discussed, every single piece of information on every single ticket may not be used in every single time. But it's the reason it is put on there in the first place. What is the purpose of putting that information on the ticket? And the purpose is so that it can be used for use by the registered owner of the vehicle, or perhaps the driver of the vehicle, the two possible disclosures to those people, notifying them of the administrative proceeding that has begun, that they have been served with a complaint for violating a parking ordinance, or it's going to be disclosed for the next police officer who's going to come into contact with it. But you can't say on every single ticket that every single piece of information is going to be used. What you can say, though, is of the three individuals who were deposed in this case who were going to be purported class plaintiffs at one point in time or another, every single one of them used at least a portion of that information for one of those reasons that the Chief talked about in his deposition. You had Mr. Smith's address that was placed on his particular parking ticket was his mother's address, and she had moved from that address prior to the time the ticket was issued a year or two before. He hadn't lived there for 11 or 12 years, but he used it as his permanent address, if you will. And he apparently had, prior to receiving the ticket, thought he had changed that with the Secretary of State. It was only upon seeing that the old address was on the ticket that he also testified that when he got the ticket and all that personal information was on there, he knew that it was he who had been charged with the violation. And you talk about those error-correcting functions. Several of the reasons that the Chief talked about would be the error-correcting function that is enhanced and made more effective when all of that information is put on there as opposed to just a simple license plate. So in Mr. Senny's case, some of that information was used. It was put for use in the administrative proceeding. When we look at the other two gentlemen, though, in terms of specifics, you have Mr. Cozy and Mr. Velasquez. When Mr. Cozy received his ticket, he realized that although it was issued to his business, which was the registered owner of the vehicle, and he thought it would have been the business address, it was in fact the address listed on the ticket was his personal address. And that was something that he was unaware of, that that was what the Secretary of State's records were. So for him, in receiving that information, it was useful and used in the administrative proceeding that was started. And then you talk about Mr. Velasquez. He had actually sold his car before the ticket was issued and found out that the gentleman who he had sold it to, and he had believed he had filed his papers with the Secretary of State to make that change, and only found out later on when he received a copy in the mail that he was receiving parking tickets on the old car. So in all three examples, all three individuals... Well, that's use by the person ticketed, but what would be the best example of use of such information by the police? Well, I think first of all, one of the ones that Judge Connelly seized on in his ruling was the watch commander who avoids a ticket. So that watch commander does not have, depending on when the person comes in, they may come in 10 or 15 minutes after the ticket is issued to their vehicle. They may come in and the officer may still be out and not coming in until the end of the And the only thing he is going to be working off of is the card stock copy of that ticket. And he's going to have to take that ticket. He's going to evaluate the person who's in front of him. There are reasons for asking for the voiding of the ticket. And the information that's on there allows him to identify them, assess their credibility, determine whether the reasons they're saying the ticket should be voided are legitimate, and if he's going to actually void the ticket or not. And this actually happens a lot in Palatine. They created their own form because of the voiding of tickets. The other one that Judge Connelly mentioned was a situation where, and Mr. Murphy talked about being an unlicensed driver. It doesn't have to be an unlicensed driver. It can be me running to the 7-Eleven and forgetting my wallet and I happen to have a parking ticket in the car and I get pulled over and that officer wants the information as soon as they can. I have information. Parking ticket as ID card? Not as ID card, but as a piece of information. A piece of information that's already been vetted, if you will, by the last police officer who wrote the ticket. So if I say here's my name, I left my wallet at home, but I happen to have this parking ticket and it has my information on there, they can look at the date of birth and assess in general my age. They can see my size, height, weight, as accurate as it may be from the driver's license information, but they can look at those things. And what it does from a police perspective is it's an officer safety issue. It reduces the officer's exposure time standing out there next to the car trying to write down all the information so that they can go back and run them on the computer while traffic's going by or in the dead of night or whatever the case may be. It's an officer safety issue. It allows them to gather that information faster, have that information that was apparently already put there by another police officer who must have run it on the computer and take it back to his car and use that information in order to assess and determine what action he's going to take now on this traffic stop. So you look at, I know Judge Connelly relied on just a couple of the many reasons that Chief Cozio testified to. However, I think when you look at the service of process or administrative proceeding permissible use, you look at the law enforcement permissible use, every one of those reasons that Chief Cozio gave falls into one or both of those categories. It may not be on every single ticket. It may not be every single piece of information on that particular ticket. It may not be every single time. Some people may never use it. But it's the reason for the disclosure, it's the reason that it was put there for use that matters. And that's why Judge Connelly and his decision relied on the Great Check decision and said proper use is not required to be immediate or certain and to determine otherwise would undermine the DPPA's countervailing purpose to allow legitimate users to access the records. And I think it's important to point out here that although it's called the Driver Privacy Protection Act, if you look at the legislative history in this case, this is really a, they called it a crime fighting act. In fact it was part of the Violent Crime Control and Law Enforcement Act of 1994. This was not, this DPPA was not meant to restrict law enforcement in their duties. And that's exactly what plaintiff is trying to do here. So it's the ultimate or potential use that the information is being put to once it's been placed on that parking ticket that is important, that determines whether that's an acceptable use under the DPPA. And I think we also have to point out that the evidence in this case is uncontradicted. It's unrebutted. The plaintiff never brought in anybody to contradict the testimony of Chief Colzio. They argue that they don't like the reasons, they think they're speculative, they don't agree with them, but there's no evidence and they have the burden of proving a use that's not permitted under the DPPA as the plaintiff in that case. So it's unrebutted evidence. They have not met their burden. They've in fact in the brief acknowledged that there really is no question of material fact here. Does the ticket go into the public record if it's contested? I mean either through, obviously there's an informal way to contest these tickets, that's through the watch commander procedure where you just bring your ticket in and argue your case to the watch commander who has the apparently is authorized to void these tickets in this informal procedure, but there's also a formal procedure for contesting a ticket, right? Certainly, and I don't know where the number one in a thousand comes from, I don't believe that's in the record, but if that's what the number is, there is a procedure. People can come in and challenge the ticket and try to adjudicate that ticket. And then of course that ticket becomes part of the complaint and that would become part of the public record. I mean that's the court file. Right, that's the only thing, that's the only thing. And so that information will become public record. And once again, that's just another reason why it is a permissible use under 2721B4 along with 2721B1. Because after all enforcement of those tickets, they're not handing out the tickets or putting parking tickets on cars. I mean it's not a souvenir for those people. It's not although maybe in this case they're trying to turn it into a lottery ticket, it's not a lottery ticket. It's a charging document. It's service of process. It lets that individual, the owner and or driver of that vehicle, know that they have been charged with a violation of the law. Let me ask you a question just on this record keeping requirement that I'm not quite sure I understand. This subsection C of the statute. Yes. It doesn't create any private right of action, correct? I don't believe So what's the point of it? Well first of all, I think if you look at in the Supreme Court, U.S. Supreme Court in Reno v. Condon said that 2721C only regulates disclosure by private persons. So it would not even apply to a government agency like the Village of Palatine at this point. But in the Inbonk decision, they talked about 2721C if the argument is that taking the information that Palatine receives from the DMV and then re-disclosing it to the owner, driver is a re-disclosure. 2721C says it talks about who can do a re-disclosure, but it directs you right back to 2721B. And if you're going to talk about the record keeping portion of it, the five years worth of records, it's not an allegation in the complaint in this case. It was never anything that was litigated or done. There's no civil action for the record keeping portion. And in this case, we disclosed information to the owner or driver, and there's a spreadsheet of every single ticket that was issued in the four-year statutory period, which lists the owner and or driver. And we disclosed to those people as part of the service of process, of starting the administrative proceeding. And then Mr. Murphy, I think, made light of the idea that we disclosed it to the Palatine police as a whole, but that is who we disclosed that to. And the record of those officers who may have come into contact with that information is there as well on the role of officers who worked during that statutory time period. I see that I'm out of time, so unless there's any more questions, I would ask that this Court affirm the decision below. Okay, thank you, Mr. Cajal. Thank you, Mr. Murphy. Subsection C applies to persons. Persons is defined as a municipality under Section 2725. The Supreme Court didn't say that it only applies to private persons. It applies to anybody making a redisclosure, and that's what the statute says. Subsection C says, an authorized recipient of personal information, which would be Palatine, may redisclose information only for a purpose permitted under Subsection B. Any authorized recipient must keep a record for five years identifying each person or entity that receives the information and the permitted purpose for which the information to be used. 2721C isn't actionable in and of itself. It provides Palatine with a permitted purpose under Subsection B. You don't get to Subsection B without going through Subsection C. There are three requirements. Only disclose the information for a purpose permitted, and keep a record of who the information was given to and the reason you gave them that information. Because Palatine discloses the information to the general public, it can't identify the recipient, and it can't identify how the information is going to be used because it's the public, again, who has a permitted purpose. So you don't even get to the exception of Subsection C. Okay, thank you, Mr. Murphy. Thank you to both counsels.